```
                    UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA
-----------------------------------------------------------------
MARCELLA LANG                     :   Civ. Action No.  02-cv-6001
                                  :
     vs.                          :
                                  :
EDUCATIONAL COMMISSION FOR        :
FOREIGN MEDICAL GRADUATES         :
-----------------------------------------------------------------
```

## *FIRST AMENDED* COMPLAINT

The plaintiff by his counsel, Samuel A. Dion, Esquire, states the following as her Complaint against defendant:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 2601 et seq.

### PARTIES

2. Plaintiff, Marcella Lang, is a female who resides at 3017 Secane Place, Philadelphia, PA 19154.

3. On information and belief, the Defendant, Educational Commission for Foreign Medical Graduates, operates a business located at 3624 Market Street, Philadelphia, Pennsylvania 19104-2685, which is located in this judicial district.

4. Defendant is an employers under 29 U.S.C. § 2611(4)(A) because it is engaged in an industry affecting commerce and it has fifty (50) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and are covered by the Family and Medical Leave Act (hereinafter "FMLA").

## FACTS

5.   Defendants employed plaintiff beginning on or about *April 3,* 2000 as an Administrative Assistant and at all times material hereto she worked in the Sponsorship department. Plaintiff was not pregnant when she was first hired.

6.   On January 24, 2002, Plaintiff was an "eligible employee" under 29 U.S.C. § 2611(2)(A) in that she worked for defendant for at least twelve (12) months and for at least 1,250 hours during the twelve (12) month period prior to the first day of her leave.

7.   At all times material hereto, plaintiff performed her job for defendant in a most competent manner.

8.   At all times material hereto, plaintiff's supervisors included defendants' agents, Eleanor Fitzpatrick (manager in Sponsorship Department) and Betty Taylor (Human Resources Manager).

9.   On or about September 2001, plaintiff informed Eleanor Fitzpatrick and Ms. Taylor that she was pregnant with twins. They discussed maternity leave, permitted under the FMLA, shortly thereafter.

10.   A couple days after January 24, 2002, Eleanor Fitzpatrick had a meeting, in which plaintiff was not included, with the rest of the Sponsorship department, and the meeting was to discuss a new computer program that was going to be installed in our computers.  Plaintiff was concerned because she would need

to know about this program also when she returned from FMLA maternity leave, so she asked Ms. Fitzpatrick about her job security.

11.  When plaintiff inquired as to her job security in about late January 2002, Ms. Fitzpatrick told her "let's wait until after you have the babies to discuss how you will return to work."  Because plaintiff is entitled to FMLA and maternity leave, this statement was improper, because the terms and conditions of her job position should not be affected by her FMLA maternity leave, and this statement demonstrated Ms. Fitzpatrick's discriminatory animus towards plaintiff as a pregnant woman who was going to take FMLA maternity leave.

12.  Before plaintiff left for her FMLA maternity leave on February 8, 2002, she filled out a form to request FMLA leave and was told by Ms. Taylor that if she desired an extension, she was to fill out a form that was provided to her by Ms. Taylor that same day.  Plaintiff was granted leave initially for about 12 weeks or until about May 3, 2002.  *However, plaintiff was never informed of the exact end date for her FMLA leave.  In fact, plaintiff's employment anniversary date was April 3, 2002, which according to defendant's FMLA policy meant that plaintiff was entitled to take 12 weeks leave beginning on April 3, 2002 and until June 26, 2002.*

13.  On about May 1, 2002, plaintiff submitted the said extension form requesting an extension of FMLA leave until July

17, 2002 for care of her prematurely born twin girls. *About a week later,* Ms. Taylor's assistant told plaintiff *that the FMLA extension request form was never received by defendant, so plaintiff submitted a second written request for an extension of FMLA leave* in about Mid-May 2002.

14. *In about late June 2002, Ms. Taylor's assistant told plaintiff that the* form that plaintiff filled out *requesting the extension* was not the "proper form". At that time, Ms. Taylor's assistant gave plaintiff a new form to fill out to request an extension of her FMLA leave, *which was entitled "Request for Non-FMLA Leave of Absence."* Neither Ms. Taylor nor her assistant informed plaintiff that her job was in jeopardy, nor did they tell her that her return to work was required. Plaintiff submitted the new form immediately, *on* about June *28,* 2002. Neither Ms. Taylor nor her assistant told plaintiff that her job was in jeopardy, nor did they tell her that her return to work was required. *Said Request for Non-FMLA Leave of Absence was approved on July 1, 2002, granting plaintiff personal leave until July 17, 2002.*

15. On July 10, 2002, plaintiff learned for the first time that her job was in jeopardy. One of plaintiff's co-workers overheard Ms. Taylor and Ms. Fitzpatrick say that "who does she think she is, she cannot just show up on July 17 and expect a job." Plaintiff called Ms. Taylor on July 10, 2002, to inquire about this conversation and Ms. Taylor told plaintiff that she

was terminated and that *first learned that* her position was filled by a temp. *Although Ms. Taylor told plaintiff that her former position was filled in "early June 2002," based on information and belief, defendant actually filled plaintiff's former position in about February 2002.* This was the first time that plaintiff was ever aware that she was replaced by another person. This is the first time that plaintiff was ever made aware that she would not be permitted to return to work. This is the first time that plaintiff was ever made aware that her job was in jeopardy. Plaintiff was never given an opportunity to return to work from FMLA leave by the defendant.

16. The true reasons why plaintiff was fired was because she was pregnant with twins and because she took and was out on FMLA maternity leave. Defendant intentionally violated the spirit of the FMLA by allowing plaintiff stay out of work while she awaited approval of her request for an extension of FMLA leave without properly and timely notifying her that she would not be granted an extension or properly notifying her that her job would be in jeopardy if she did not return to work.

17. *Defendant violated its own FMLA policy and procedures by failure to notify plaintiff whether or not her FMLA extension was approved prior to the expiration of her FMLA leave.*

18. *Defendant violated its own policies and procedures regarding approved personal leave by failing to reinstate plaintiff to her former position upon the plaintiff's return from*

*personal leave.*

19.  Plaintiff's medical leave was taken pursuant to the Family and Medical Leave Act ("FMLA").  Plaintiff was entitled to take the time off under 29 U.S.C. § 2612(a)(D) and (b)(1) & (2) because of planned medical treatment for her serious medical condition and because of planned care for her premature newborn twin babies.  Plaintiff's notice to defendant of the necessity for her leave and the extension thereto were sufficient under 29 U.S.C. § 2612(e) because she provided such notice as was practicable.  Although plaintiff's FMLA exceeded 12 weeks, the defendant permitted plaintiff to request an extension of leave beyond 12 weeks as permitted under the FMLA.

20.  Defendant and its agents intentionally and willfully violated plaintiff's rights under the FMLA to take medical leave and to be free from retaliation for taking FMLA leave.  Furthermore, defendants retaliated against plaintiff for exercising her rights under the FMLA, and violated the FMLA by failing to restore plaintiff to her previously held position before she went out on FMLA leave.

21.  Plaintiff would have returned to work upon request at the end of her initial leave if she was properly informed that her job was in jeopardy if she did not do so, or if defendant properly notified her in a timely manner that her request for an extension would not be granted.

22.  *Defendant improperly filled plaintiff's former position*

*knowingly made no alternative arrangements for her return to work at the end of her FMLA leave in violation of the FMLA.*

23.  At all times material hereto, defendant acted by and through its employees and/or agents who acted within their capacity to discipline, hire and/or fire.

24.  Plaintiff sustained lost pay and benefits, and has been caused to pay attorneys fees and costs to prosecute this matter.

25.  Accordingly, defendant and its agents intentionally violated plaintiff's rights as protected under the Family and Medical Leave Act and are therefore responsible for payment of exemplary damages of two times actual damages to plaintiff.

26.  Plaintiff filed an EEOC charge alleging pregnancy discrimination and retaliation regarding these events which is still pending.  There are no other matters pending with any court or administrative agency other than this EEOC complaint involving these events.  *Plaintiff is entitled to and has requested the issuance of a notice of right to sue letter from the EEOC. Once the right to sue letter is issued, plaintiff will move for a Second Amended Complaint to include a Title VII count.*

### COUNT 1-- VIOLATION OF FMLA

*27.  Plaintiff hereby incorporates paragraphs 1-26 as if set forth at length herein.*

28.  By and through its course of conduct, defendant willfully violated the FMLA (29 U.S.C. § 2601, § 2612, § 2614 & § 2615 et seq.) by terminating plaintiff's employment in

retaliation for her exercise of her FMLA rights, by failing to restore plaintiff to the position of employment held by her when the leave commenced, by terminating her while she was out on leave, by terminating her employment, and by denying, restraining and threatening to deny plaintiff leave under the FMLA.

WHEREFORE, the plaintiff prays that this Court accept jurisdiction over this matter; impanel and charge a jury with respect to the causes of action, and award judgment to Plaintiff and the following damages: (1) back pay, front pay, and all benefits along with pre and post judgment interest and all taxes to be paid on any such award; (2) exemplary damages for intentional violation of the FMLA;  (3) attorney's fees, costs, and expenses as provided for by applicable federal statutes; (4) interest; and (5) any other relief which this Court deems just and equitable.

### *COUNT 2-- BREACH OF CONTRACT*

*29.  Plaintiff hereby incorporates paragraphs 1-28 as if set forth at length herein.*

*30.  Defendant's "ECFMG Employee Handbook" sets forth the contract of employment (hereinafter "employment contract") between plaintiff and defendant as of April 3, 2000.  Plaintiff is not in possession of the entire handbook, however, plaintiff is in possession of relevant portions which are attached hereto as Exhibit A.*

*31.  Said employment contract states on page 28 that*

*defendant was required to reinstate plaintiff to her former position upon return from her approved personal leave on July 17, 2002.*

*32. Defendant breached the employment contract by failing to reinstate plaintiff to her former position on July 17, 2002, and by failing to take any measures whatsoever to ensure plaintiff's employment on July 17, 2002 and thereafter.*

*33. Defendant breached the said employment contract by failing in its duty to reinstate plaintiff's employment. This breach resulted in damages to plaintiff.*

*WHEREFORE, the plaintiff prays that this Court accept jurisdiction over this matter; impanel and charge a jury with respect to the causes of action, and award judgment to Plaintiff and the following damages: (1) back pay, front pay, and all benefits along with pre and post judgment interest and all taxes to be paid on any such award.*

Dated:    Philadelphia, PA
          February 4, 2003

                              Respectfully submitted,
                              DION & GOLDBERGER


                              By: _____
                              SAMUEL A. DION, ESQ.
                              1515 Locust Street, 10th Fl.
                              Philadelphia, PA 19102
                              (215) 546-6033
                              Attorney for Plaintiff